PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JOSIAH JACOB DEYTON; ANDREW
RYAN DEYTON; JONATHAN NEIL
KONIAK,

*Petitioners-Appellants,*

v.

ALVIN WILLIAM KELLER, JR.,
Secretary of NCDOC; LANDAR
CORPENING, Superintendent of
Foothills Correctional,

*Respondents-Appellees.*

No. 11-7389

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Martin K. Reidinger, District Judge.
(1:10-cv-00127-MR-DLH; 1:10-cv-00128-MR-DLH;
1:10-cv-00129-MR-DLH)

Argued: May 15, 2012

Decided: June 15, 2012

Before WILKINSON and AGEE, Circuit Judges, and
Henry E. HUDSON, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Agee and Judge Hudson joined.

**COUNSEL**

**ARGUED:** Mary Sheehan Pollard, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellants. Clarence Joe DelForge, III, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Hoang V. Lam, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellants. Roy Cooper, Attorney General, Raleigh, North Carolina, for Appellees.

---

**OPINION**

WILKINSON, Circuit Judge:

Petitioners appeal from the district court's denial of habeas corpus relief. They contend that, at their sentencing for armed robbery of the Sunday worship services at a North Carolina church, the state trial judge impermissibly made references to religion, thereby violating their rights to due process. But the defendants' choice to target a church during weekly services imbued their crime with an undeniably religious character. Crimes of this nature carry special hazards for the freedom of all faiths to worship undisturbed. Far from being "an unreasonable application of[ ] clearly established Federal law," 28 U.S.C. § 2254(d), the trial judge's comments reflected the distinctive harms to the community of the particular crime that the defendants chose to commit. We therefore affirm the denial of the petition.

I.

Petitioners Josiah Deyton, his coworker Jonathan Koniak, and his brother Andrew Deyton formulated a plan to rob Sunday services at a church in Mitchell County, North Carolina. On April 13, 2008, the conspirators met and cased possible

churches to target, ultimately choosing to rob the Ridgeview Presbyterian Church in the belief that it would provide the greatest chance both of success and of escape.

Wearing ski masks and gloves, the defendants barged into the Sunday morning worship service, carrying firearms to intimidate the congregation and duct tape to secure submission. The men seized the parish's weekly collection, and used the offertory plate to amass money, keys, and other valuables from the worshipers, amounting to $2670. Koniak bound one parishioner with the tape, and Josiah Deyton's gun discharged while he was stealing a cell phone. The men threatened the assembled congregation, warning that they would come back to kill the churchgoers if they tried to call the police. The three then absconded in their getaway car.

Undeterred, congregation members called the police, reported the robbery, and provided a description of the car. Shortly thereafter, police apprehended the robbers, finding in their car the guns, masks, and gloves used in the crime. Police recovered from the car a large quantity of cash and some personal property taken from members of the congregation. The three men were arrested and subsequently confessed to robbing the church and its members.

On July 22, 2008, Josiah and Andrew Deyton pleaded guilty to eleven counts of armed robbery and one count of conspiracy to commit armed robbery in the Superior Court of Mitchell County. Koniak pleaded guilty to the same charges a month later. After Koniak's guilty plea, Judge James L. Baker, Jr., held a consolidated sentencing hearing for all three defendants. During the lengthy proceeding, Judge Baker heard from the State, from defense counsel, from members of the congregation who had been robbed by the defendants, and from witnesses attesting to the defendants' good character. Judge Baker also reviewed victim impact statements that had been provided by other members of the church not present at the hearing. Before imposing sentence, Judge Baker spoke at

length about the severity of the defendants' crime and related directly the words and feelings of those who were affected by it:

I was interested in reading what the church members might have thought that should be done to you and the church members after describing what they went through have indicated that the experience was a horrible experience for them. I mean even more so than being robbed in a store or being robbed on a street or a highway or even worse than being broken in in their home. I mean if there's one place in the whole world that you ought to have the right to feel like that for just a few minutes—for just a few minutes you can put the dangers of the world away and that you can step to some degree of peace and solitude and serenity with some degree of safety it would be in a church.

I think it was very appropriate what one person wrote that coming in God's house using God as a curse and to make people give up their possessions and taking God's money and threatening God's people, I can't imagine how evil these men are to have done this. That is the feeling of one person and I hope you realize that's an opinion that is or a feeling that is justified. I mean you didn't just steal money from people. You took God's money. You took the Lord's money and those of us that believe that there is an Almighty and that there is a being that created this world to go in and then steal money that is being tendered by people for the furtherance of an earthly kingdom is just outrageous. . . .

Gentlemen, this is just something that can't be tolerated and your attorneys have all asked for leniency and mercy but there are times when you have to kind of draw the line and you have to say that there are

some things that just can't be tolerated by society. I mean you can't just go in a church armed and tie people up or hold them at gunpoint, threaten to kill them and rob the collection plate and rob them while they are in the worship service and expect that the law is not going to come down just about as strongly as it can on you. There is scripture that says "Vengeance is mine sayeth the Lord" but every now and then I think the judicial system has to contribute what it can.

Judge Baker then sentenced all three defendants to ten consecutive presumptive-range sentences of 64 to 86 months on the armed robbery counts, and a suspended sentence of 25 to 39 months on the conspiracy charge. Petitioners took no direct appeal of that sentence.

On August 21, 2009, following the North Carolina state procedure for collateral attacks on criminal convictions, petitioners filed Motions for Appropriate Relief in the Superior Court of Mitchell County, alleging, as they do here, that Judge Baker's comments reflected an impermissible religious bias that infected the sentencing procedure in violation of due process. On May 11, 2010, the state MAR court denied the petitioners' motion, concluding that "nothing motivated the sentencing Judge, except for the atrocious conduct of the defendant and his cohorts in accomplishing the crimes they committed." On June 1, 2010, the petitioners sought certiorari from the North Carolina Court of Appeals, which was denied on June 17, 2010. On June 21, 2010, petitioners simultaneously filed a petition for certiorari with the North Carolina Supreme Court and a petition for habeas corpus in the Western District of North Carolina. The federal magistrate judge held the habeas corpus petition in abeyance pending the resolution of the state certiorari petition, which was denied on August 26, 2010. On November 1, 2010, the magistrate judge recommended that the habeas corpus petition be denied. On September 27, 2011, the district court adopted the magis-

trate's report and recommendation and issued its own memorandum and order denying the petition. This appeal followed.

II.

We review the district court's denial of a petition for habeas corpus *de novo*. *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010). Because the petitioners' challenge stems from comments made by the trial judge at a state sentencing proceeding, however, we must show the traditional deference afforded to sentencing courts before concluding that there was constitutional error warranting habeas relief.

Federal courts have long respected the latitude allowed by state law to state judges at sentencing. *See Williams v. New York*, 337 U.S. 241, 246-47 (1949). Perhaps more than in any other proceeding, "the court has considerable leeway and discretion in governing the conduct of a sentencing." *State v. Smith*, 532 S.E.2d 773, 790 (N.C. 2000).

The North Carolina courts have been unequivocal in their support of this tradition, especially in a context such as that before us here. For example, in *State v. Sullivan*, 151 S.E.2d 41 (N.C. 1966), the North Carolina Supreme Court held that it would not "restrict informal remarks made by a judge at the time of pronouncing judgment," particularly when, as in this case, "the undisputed facts . . . , plus the defendant's plea of guilty . . . , justified a substantial sentence." *Id.* at 42. North Carolina has been clear that whether or not a reviewing court "approve[s] of the judge's extended pre-sentence remarks," reversal is not warranted so long as "the evidence in th[e] case justified the sentence imposed." *State v. Bright*, 271 S.E.2d 368, 380 (N.C. 1980).

North Carolina's view is typical of sentencing practice generally. Comments on the severity of a crime have long been integral to the imposition of punishment. "Courts have always taken into consideration the harm done by the defendant in

imposing sentence." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). A sentencing judge need not merely reflect in silence upon the gravity of the offense. The Supreme Court has recognized that "the judge's statement to the defendant, made at the time of sentencing, is an especially important part of the criminal process." *Rita v. United States*, 551 U.S. 338, 367 (2007) (Stevens, J., concurring). Because sentencing unaccompanied by explanation is an arbitrary exercise, *see United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009), "[a] public statement of th[e] reasons [for the sentence imposed] helps provide the public with the assurance" that creates public trust. *Rita*, 551 U.S. 356 (maj. op.).

As a result, we not only show deference to sentencing courts in general, but to the need for judges to vindicate the public interest through statements about the particular harms of particular crimes and the need for a particular sentence. Consistent with those goals, the Supreme Court has limited assignments of constitutional error under the Due Process Clause to cases in which the challenged action is "so unduly prejudicial that it renders the [proceeding] fundamentally unfair." *Payne*, 501 U.S. at 825. This is a high bar for a habeas petitioner to surmount. We will not allow "gossamer possibilities of prejudice to a defendant . . . to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law." *Snyder v. Massachusetts*, 291 U.S. 97, 122 (1934) (Cardozo, J.), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964).

III.

The petitioners nevertheless assert that the sentencing judge's comments in this case so impermissibly referenced religious beliefs that they deprived the defendants of due process, relying principally on this court's decision in *United States v. Bakker*, 925 F.2d 728 (4th Cir. 1991). In that case, we reversed a sentence because the district judge at sentencing announced his "personal sense of religiosity and simulta-

neously punish[ed] defendants for offending it." *Id.* at 740. But the petitioners' argument is flawed in two ways. First, it ignores the limitations on both the scope of review and the sources of authority placed on federal habeas analysis by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). Second, even the substance of *Bakker* and the Supreme Court precedents on which that case relied do not disqualify under AEDPA standards the sentencing judge's comments at issue in this case. Preserving the free exercise of all religions permits society—through its judges—to offer pointed condemnation of crimes that inhibit the practice of any faith.

## A.

Although the restrictions on federal collateral review of state convictions are well known, they are worth reemphasizing here. Habeas corpus review is to be conducted pursuant to a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Under the limitations of AEDPA, a state court decision may only be reversed by a federal court if it is either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *Bakker*, by contrast, was before this court on direct appeal from a federal conviction, a posture that allowed this court greater latitude than collateral review of state convictions affords. It is clear that *Bakker* does not govern these proceedings, because, although it is plainly precedent in this circuit, it does not represent "law as determined by the Supreme Court of the United States." *Id.*

We turn therefore under AEDPA to the relevant Supreme Court case law. While the Supreme Court has held that "the

sentencing process . . . must satisfy the requirements of the Due Process Clause," *Gardner v. Florida*, 430 U.S. 349, 358 (1977), the Court has not set forth the sort of specific limitations on a judge's conduct of sentencing proceedings that would permit the federal courts to grant habeas relief in this case. The most guidance the Court has offered is that sentencing cannot be based on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as for example the race, religion, or political affiliation of the defendant." *Zant v. Stephens*, 462 U.S. 862, 885 (1983). Although the sentencing judge in this case referred to religion in his comments, he in no way relied upon the "religion . . . of the defendant[s]," and so we are left to decide whether his statements violated the more general prohibition on "factors that are constitutionally impermissible."

That inquiry leaves us without the direction from the Supreme Court that AEDPA demands. After all, before granting habeas relief, we must conclude not only that the sentencing judge's comments violated due process, but also that "fairminded jurists could [not] disagree" with that determination. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Relying on extremely general statements in *Gardner* and *Zant* provides us with little basis for second guessing the North Carolina courts. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Deference under AEDPA is not some hollow iteration. *See Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). Rather, it is constitutionally and statutorily prescribed. "Federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Calderon v. Thompson*, 523 U.S. 538, 555-56 (1998). Federal law therefore reserves habeas relief for "extreme malfunctions in the

state criminal justice systems," *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring), not close calls that depend on contestable extensions of abstract law. The Supreme Court has instructed that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). This general caution has particular force where state sentencing is involved. The states bear the primary responsibility for the punishment of criminal offenders in our society, and federal courts risk upsetting the careful balance of federalism by intruding casually upon their sentencing processes. See Section II *supra*.

### B.

With these limitations in mind, we cannot conclude that the sentencing judge's comments constituted an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d). The Supreme Court's decision in *Zant* bars a sentencing judge from relying on the "religion . . . of the defendant" in determining the appropriate term of imprisonment. *Zant*, 462 U.S. at 885. In *Bakker*, we extended that principle to find error "when a judge impermissibly takes his own religious characteristics into account in sentencing." *Bakker*, 925 F.2d at 740. But this case is quite different. The petitioners were not sentenced on account of their religion or on account of the judge's religion. It was their admitted crime that had a religious component: by robbing a Sunday worship service in a church they disrupted the ability of their fellow citizens to freely practice their faith in peace.

The same factors that *Zant* prohibits considering when they are characteristics of the criminal may in fact be important to consider when they are characteristics of the crime. Indeed, the Supreme Court has previously recognized the significance of this distinction. For example, although *Zant* forbids sen-

tencing courts from considering "the race . . . of the defendant," *Zant*, 462 U.S. at 885, the Supreme Court has held that it is constitutional for a defendant to "be more heavily punished if the victim is selected because of his race." *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993). The Court noted the particular likelihood that such crimes will "inflict distinct emotional harms on their victims and incite community unrest." *Id.* at 488. When a defendant's crime tears so violently at the fabric of our society, whether by racial animus toward the victim or by disruption of the religious practice of others, it is appropriate for a sentencing court to take that unique harm into account. "[S]entencing must accurately reflect the community's attitude toward the misconduct of which the offender has been adjudged guilty, and thereby ratify and reinforce community values." *United States v. Grayson*, 438 U.S. 41, 48 n.8 (1978). Indeed in *Bakker* we recognized "that a sentencing court can consider the impact a defendant's crimes have had on a community and can vindicate that community's interests in justice." *Bakker*, 925 F.3d at 740.

The disruption of worship services has an especial effect on the community that it was appropriate for a sentencing judge to take into account. Ours is a society with a diverse religious heritage that has long prized the ability of citizens of all faiths to exercise their beliefs free from fear or intimidation. Although the Constitution explicitly protects the right to the free exercise of religion from state interference, the government has long taken a role in protecting citizens from private deprivations of their constitutional rights as well. *See, e.g.*, *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (upholding federal statute criminalizing conspiracy to "injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States," *id.* at 98 n.4).

Indeed the law must protect places that demand special tranquility so that our fellow citizens can exercise their consti-

tutional rights free from fear. Religious services are particularly intimate moments regardless of the faith being observed. The shocking nature of this crime does not depend on what sect's prayer was disturbed—this crime would be equally offensive at a synagogue, mosque, or any other house of worship. Much as we afford the home a particular sanctity as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago*, 394 U.S. 111, 125 (1969) (Black, J., concurring), houses of worship must be refuges for those seeking guidance, peace, comfort, and religious fellowship without fear of criminal intimidation.

Indeed, one need not have any faith at all to appreciate the profound shock visited by these defendants. Just as all members of society condemn racial violence regardless of their own ethnicity, all people of good will revile the armed robbery of a religious service whether or not they share the particular creed whose practice was disrupted. Merely "because the state wishes to protect those who do worship on Sunday does not mean that the state means to impose religious worship on all." *Gallagher v. Crown Kosher Super Market of Mass.*, 366 U.S. 617, 627 (1961).

## C.

We conclude that the sentencing judge's comments afford no warrant for the award of habeas relief.

First, the record makes clear that many of the judge's comments did not reflect "the court's own sense of religious propriety," *Bakker*, 925 F.2d at 741, but voiced the expressions of the community through victim impact statements and testimony at sentencing. The entirety of the challenged comments was prefaced by reference to "what the church members might have thought," and continued to define the expressions in terms of "what one person wrote" and "the feeling of one person." It was not unconstitutional for the judge to have considered these statements in determining the appropriate sen-

tence, *see Payne*, 501 U.S. 808, and it was legitimate for the judge to state for the record the sentiments of those parishioners that he found most compelling.

Second, to the extent that the judge adopted some of these opinions as his own, we do not think that rises to the level of a due process error mandating habeas relief. Judge Baker was not expressing a personal offense at the crime so much as he was expressing the opprobrium of the community at large. A judge joining a general expression of dismay at a particularly heinous offense does not amount to the kind of "reactions based on his personal experiences that" may not be considered at sentencing. *Barclay v. Florida*, 463 U.S. 939, 971 (1983) (Stevens, J., concurring). Part of the compact that gives order to society is that "[w]hatever power therefore individuals had of punishing offences . . . is now vested in the magistrate alone." 4 W. Blackstone, *Commentaries on the Laws of England* 8 (1765). For the judge too is a member of the community, and "[t]he sentencing process assumes that the [judge] will exercise judgment in light of his or her background, experiences, and values." *Barclay*, 463 U.S. at 970 (Stevens, J., concurring).

Taken as a whole and in their proper context, the judge's comments describe the unique way that robbing a church harmed the members of the community. The robbery of, say, a bank or convenience store is bad enough. But the intentional selection of a church as a target and of worship services as the time of attack merits special condemnation because it is equally an assault on religious liberty as it is on physical safety. It would be odd indeed if the armed robbery of worshipers and violent threats to parishioners did not elicit strong condemnation at sentencing. But the judge, as noted, nowhere mentioned the religious beliefs or lack thereof of the defendants. He expressed no preference for one sect over another. He mentioned no specific tenets of faith that might have been offended. To the extent that the judge quoted from the Bible, there is, as the MAR court found, no credible argument that

he impermissibly rested the chosen term of imprisonment on scripture and not on the North Carolina General Statutes.

The petitioners allege that "the judge sentenced these young men as harshly as he did because they chose to rob a church, rather than . . . some other secular entity." Appellant's Br. at 17-18. Be that as it may, no Supreme Court case comes close to holding that criminal harms visited upon religious congregations may not be the subject of stern and special disapproval from the bench. The various state and federal courts that have reviewed this case are unanimous in their conclusion that the sentencing judge's comments represented that strong disapprobation, and nothing more. As the state MAR court found, "nothing motivated the sentencing Judge, except for the atrocious conduct of the defendant and his cohorts." The federal magistrate concluded that the "offense conduct was especially serious because it involved victimizing people at gunpoint in a place where, ordinarily, they would feel safe." And the district court ruling appealed here was clear that the sentence was only "vindicating the community's interest in justice" for "behavior . . . exceeding all acceptable social boundaries." To this unanimous chorus we add our voice. The sensitivity of the site and the vulnerability of those who worshipped there played a critical part in petitioners' planning of the crime, and it was no violation of due process for these same considerations to play a critical part in petitioners' punishment.

The judgment of the district court is therefore

*AFFIRMED*.