COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Causey and Chaney
Argued at Williamsburg, Virginia

JONATHAN LUIS JACKSON

v.        Record No. 0973-24-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE VERNIDA R. CHANEY
FEBRUARY 10, 2026

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

Brooke I. Hettig, Assistant Attorney General (Jason S. Miyares,[1]
Attorney General, on brief), for appellee.

The circuit court convicted Jonathan Luis Jackson, pursuant to a written plea agreement,

of first-degree murder, use of a firearm in the commission of murder, malicious wounding, use of

a firearm in the commission of malicious wounding, two counts of malicious shooting at an

occupied vehicle, two counts of shooting a firearm from a vehicle, and shooting a firearm within

1,000 feet of a school.[2]  At sentencing, the judge made comments referencing Jackson's race,

comparing Jackson to an unrelated Black defendant, and discussing broader concerns about

community gun and gang violence.  R. 334-36.  The judge then sentenced Jackson to life

imprisonment plus 43 years of incarceration.  R. 339-40.

Jackson appeals only his sentence, arguing that the sentencing judge's comments show

that the judge "was not fair, impartial and unbiased" in violation of due process.  Although

_____

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] In exchange for Jackson's plea, the Commonwealth nolle prossed the remaining 55
charges.

Jackson acknowledges that he did not preserve this due process argument, he asks this Court to review it under Rule 5A:18's ends-of-justice exception. While we do not minimize the seriousness of Jackson's crimes, for the reasons that follow, this Court applies the ends-of-justice exception[3] and remands for resentencing before a different circuit court judge.

This holding is narrow. The Court does not imply that a sentencing judge cannot acknowledge the gravity of a violent crime, express concern for community safety, or show empathy for the victims and their families. Rather, a constitutional violation occurs when the sentencing record gives a reasonable appearance that impermissible considerations, such as race or extrajudicial comparisons to unrelated defendants, viewed as a whole, formed part of the court's sentencing rationale. Due process demands not only the reality but also the appearance of a neutral and detached sentencing authority.

BACKGROUND[4]

I. The Incident

On the evening of March 27, 2022, Reginald Thorne and Tamiesha Rogers were parked in a white SUV near Thorne's residence in Suffolk when two men wearing ski masks approached. As one of the men knocked on the SUV's window, Rogers noticed a gun and quickly drove off as Thorne called 911. The two men, Jackson and his childhood friend Phillip

---

[3] Because this Court finds that Jackson's argument can be considered under the ends-of-justice exception, we do not address his good cause argument. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

[4] "We recite the facts 'in the "light most favorable" to the Commonwealth, the prevailing party in the [circuit] court.'" *Pereira v. Commonwealth*, 83 Va. App. 431, 439 n.3 (2025) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). Doing so requires this Court to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

Etheridge, then entered Etheridge's gold-colored Ford Contour. Believing that one of the SUV's occupants had stolen from him, Jackson instructed Etheridge to follow the SUV. Shortly thereafter, Jackson leaned out of the passenger seat window and fired an "assault-style weapon" at the SUV. Multiple bullets struck Rogers, Thorne, and the SUV.

When police arrived, they found that Rogers and Thorne had both been shot. Rogers was struck twice in the torso and once in the head, and medics later "pronounced [her] dead at the scene." Thorne sustained gunshot wounds to his back and "upper left shoulder," was transported to the hospital, and survived. Police recovered cartridge casings and bullets from the SUV and Rogers's body; forensic analysts later determined that they all had been fired from the same gun. Several "shell casings were [also] found within 1,000 feet of Northern Shores Elementary School."

The day after the shooting, Jackson purchased cleaning supplies and arranged for Etheridge's car to be cleaned. Within days, police identified Etheridge as the owner of the gold-colored Ford Contour involved in the shooting. When questioned, Etheridge admitted that he was the driver, identified Jackson as the masked shooter, and explained that Jackson believed someone in the SUV had stolen an item from him, prompting the pursuit. Police later arrested Jackson.

## II. Sentencing Hearing

In February 2024, Jackson pleaded guilty to nine counts, and the Commonwealth nolle prossed the remaining charges. During the court's colloquy, Jackson stated that he understood the charges, was entering the plea "freely and voluntarily" after consulting with counsel, and declined the opportunity to ask the court any questions. Jackson also confirmed that he had reviewed and signed the plea agreement, understood the mandatory minimums and sentencing ranges for each offense, and knew that the guidelines were discretionary and not binding on the

court. Based on Jackson's plea, the agreement, and the proffered evidence, the circuit court convicted him, set the matter for sentencing, and ordered a pre-sentencing report (PSR).

At the May 2024 sentencing hearing, the court reviewed the PSR and the sentencing guidelines. Together, they reflected a recommended sentencing range of 27 years and 4 months (low end), 36 years and 5 months (midpoint), and 45 years and 6 months (high end). The PSR also showed that Jackson was 23 years old at the time of the offense and had no criminal record.

Eight witnesses testified on Rogers's behalf, including her sisters, daughter, niece, and nephew. Rogers's older sister testified that her death almost destroyed her family. Rogers's younger sister stated that Jackson stole her best friend and pleaded with the judge, "I'm begging you, please don't let this monster stay on the prowl." R. 307-10.[5] Other family and friends emphasized Rogers's kindness, her role as a mother of two, and her devotion to teaching special-needs and inner-city children. Her eldest daughter testified that Rogers was her "best friend" and that her younger sister, only 10 years old, was left without her mother. R. 292-313, 403-05.

Jackson's family and friends testified on his behalf and submitted letters requesting leniency. R. 364-402. The letters described Jackson as having "high moral character" and as a "joy to be around." R. 364-67, 370. His grandmother testified that her family wanted to give Rogers's family "condolences" and that they were "really, really sorry" for "the pain" and their "loss." R. 315-17. Other letters and testimony portrayed Jackson as remorseful, honest, and reliable, and suggested he may have acted out of desperation or under negative influence. R. 367-80.

---

[5] The court also accepted into evidence an emotional and detailed victim impact statement written by Rogers's sister. R. 403.

After the close of evidence, the Commonwealth requested the maximum sentence for each offense, including life imprisonment for first-degree murder. The Commonwealth emphasized Rogers's kind-spirited character and community involvement and reminded the judge that "[i]t took nearly ten months and federal marshals to find . . . Jackson in another state." R. 318, 321. The Commonwealth noted that Jackson fired 28 shots at the vehicle and maintained that the letters sent on Jackson's behalf presented a façade inconsistent with his conduct. R. 319-21, 332.

Jackson emphasized his young age, education, family support, church involvement, employability, and lack of a criminal record. R. 323-24. He explained that he pleaded guilty to accept responsibility and to spare Rogers's family from a lengthy and emotional trial. R. 326. In allocution, Jackson acknowledged that his actions were "heinous," apologized to Rogers's family for his "mistake," and stated that his offenses would be a "weight on [his] shoulders for the rest of [his] life." R. 331. He concluded that he planned to dedicate his life to becoming "a better person." R. 331-33.

### III. Sentencing Judge's Comments

After the parties' arguments, the judge stated that he wanted to "say a few things" before pronouncing Jackson's sentence. R. 333. He acknowledged that the hearing was "very difficult for everybody involved" and remarked that he had "been thinking a lot . . . about not just this case but every case that comes before" him. R. 333-34. He then referenced an earlier case on his docket involving "another young man" in "a shooting case" and asked:

> What is it going to take for our communities to quit killing each other? What is it going to take for young [B]lack men to quit killing each other? And young [B]lack women, what is it going to take? We could outlaw all the guns. We could do all that, but, as you-all know, the majority of the guns that are being used in these crimes are purchased illegally. They're not legal.

> . . . I mean, the gun that was used in this particular case could have been purchased legally, but I'm fairly certain that it wasn't a legal firearm in the hands of this young man. And that young man was before us before on those gang charges and that shooting that happened right here behind the courthouse. . . . He was a felon. . . . He should not have had a firearm. So what is it going to take?

R. 334.

The judge next referenced his own family, noting that he often tells them to "assume that everybody has a gun." R. 335. He expressed "shock[] at the level of violence in the community" and compared Jackson's case to that of "so many young men coming in here" who "fight[] each other over territory or some perceived slight, or whatever it is . . . ." R. 335-36. The judge specifically noted that "young men come before [him] all the time" and that "all of them are young men *like* Mr. Jackson and they want to have a gun." R. 334-35 (emphasis added). Addressing Jackson directly, the judge continued:

> It's unbelievable that people will continue to do this and that's the question, Mr. Jackson. Why? We can make assumptions. Maybe you thought somebody slighted you, thought it made you feel big, thought it made you feel like a big man. I don't know. But it just never ceases to amaze me. And I don't mean that in a funny way. I'm just shocked at the level of violence in the community, and especially among young men such as you.
>
> You had so much going for you. I've read all your character letters. I am without words, really.

R. 335-36.

The judge emphasized that "[g]uns are real," "[t]hey kill people," and "too many young men and women are dying on our streets . . . because of firearms." R. 336. He then drew a comparison to his own family, stating that his wife and her sister were close in age and that he could not "imagine what it would be like for either one of them." R. 337. The judge also stated he could not imagine "what [his] wife would feel like if she had gone through what [Rogers's

- 6 -

sister] went through." R. 337. He stated that the case "really hit home and hit hard" and that he felt there was "nothing [he could] do." R. 338.

Following these remarks, the judge sentenced Jackson to life plus 43 years of incarceration.

ANALYSIS

Jackson argues that the sentencing judge deprived him of due process[6] "by making personal comments" that revealed the judge was not "fair, impartial, and unbiased." He asserts a constitutional right to a "neutral and detached judge" and notes that the judicial canons require adjudication without allowing "family, social, political or economic . . . relationships to influence the judge's judicial conduct or judgment." Jackson also argues that, by comparing him to another Black man who unlawfully possessed and discharged a firearm near the courthouse, the sentencing judge revealed an improper bias "against young [B]lack men who use illegal guns to shoot other people." According to Jackson, these statements "gave an appearance of bias and called into question [the judge's] impartiality."

For the reasons that follow, this Court concludes that the sentencing judge denied Jackson due process by making personal comments that created an appearance of bias and suggested potential reliance on improper considerations at sentencing.

I. Ends of Justice

Before addressing the merits, we consider whether Jackson waived his due process claim under Rule 5A:18, and if so, whether the ends-of-justice exception applies. "Whether an appellant is entitled to invoke th[is] exception [to Rule 5A:18] is a question of law that this Court [considers] de novo." *Bell v. Commonwealth*, 81 Va. App. 616, 628 (2024).

---

[6] Jackson asserts his due process rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 8 and 11 of the Virginia Constitution.

Rule 5A:18 provides that "[n]o ruling of the [circuit] court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 applies to bar even constitutional claims." *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023) (quoting *Farnsworth v. Commonwealth*, 43 Va. App. 490, 500 (2004)).

Here, Jackson concedes that he waived his due process claim by failing to timely and specifically object to the sentencing judge's comments. He nevertheless asks this Court to consider the claim under the ends-of-justice exception.[7]

The ends-of-justice exception is "narrow" and "is to be used" only when the alleged error is "clear, substantial and material." *Merritt v. Commonwealth*, 69 Va. App. 452, 460 (2018) (quoting *Masika v. Commonwealth*, 63 Va. App. 330, 333 (2014)). To invoke the exception, "a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997) (citing *Mounce v. Commonwealth*, 4 Va. App. 433, 436 (1987)). "Virginia courts . . . require a defendant to present not only a winning argument on appeal but also [an argument] demonstrating that the [circuit] court's error results in a 'grave injustice' or a wholly inexcusable 'denial of essential rights.'" *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009)).

Consistent with the narrow scope of the exception, the application[8] depends on "(1) whether there is [an] error as contended by the appellant; and (2) whether the failure to apply the

---

[7] This case does not involve a claim that the sentence itself was excessive, disproportionate, or unlawful. Rather, the asserted constitutional violation concerns the integrity of the sentencing process and the appearance of impartiality required by due process.

[8] "In criminal cases, this *usually* requires a showing that the defendant was 'convicted for conduct that was not a criminal offense[,] or the record must affirmatively prove that an element of the offense did not occur.'" *Winslow*, 62 Va. App. at 547 (emphasis added) (quoting *Brittle*,

ends of justice provision would result in a grave injustice." *Bell*, 81 Va. App. at 628 (quoting *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018)).

Certain constitutional errors affect the basic framework within which judicial proceedings occur, rather than the correctness of a particular outcome. A sentencing proceeding that is conducted, or reasonably appears to be conducted, by an adjudicator whose impartiality can reasonably be questioned implicates due process at a fundamental level. When the record affirmatively reflects that a defendant may have been sentenced by a tribunal whose impartiality can reasonably be questioned, the proceeding constitutes a denial of an essential constitutional protection. In that circumstance, the deprivation is structural and procedural, and it exists independently of whether the sentence falls within statutory limits.

First, Virginia appellate courts have treated certain due process violations as "error" for purposes of the ends-of-justice inquiry. *See Allen v. Commonwealth*, 36 Va. App. 334 (2001); *Duck v. Commonwealth*, 8 Va. App. 567 (1989). In *Allen v. Commonwealth*, this Court stated that "[t]he denial of due process involves the denial of a fundamental constitutional right and falls within the ambit of Rule 5A:18 to attain the ends of justice," where the Commonwealth increased the severity of charges in response to the defendant's exercising his right to a statutory appeal. 36 Va. App. at 338-39, 341-42. Similarly, in *Duck v. Commonwealth*, this Court found a manifest injustice when a due process violation resulted in the defendant being charged and

---

54 Va. App. at 513). However, caselaw suggests that those requirements are generally confined to sufficiency-of-the-evidence cases, and that the underlying principle applies more broadly. *See, e.g.*, *Brittle*, 54 Va. App. at 512-14 (clarifying that the focus is on whether the error was "clear, substantial and material" (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 219 (2004))); *Redman*, 25 Va. App. at 221-22 (finding that sufficiency cases require an appellant to "do more than show that the Commonwealth *failed* to prove an element or elements of the offense"); *Brown v. Commonwealth*, 8 Va. App. 126, 133 (1989) (explaining that the exception permits redress in "limited instances of obvious injustice" where the error "is so contrary to fundamental notions of justice").

convicted of a more serious offense only after invoking his right to appeal to the circuit court from the general district court.  8 Va. App. at 570-71.

*Duck's* ends-of-justice analysis did not arise in isolation.  Rather, it expressly relied on the Supreme Court of Virginia's decision in *Cooper v. Commonwealth*, 205 Va. 883 (1965), which invoked the ends-of-justice exception to reverse a conviction after police obtained the defendant's confession outside the presence of counsel.  *Id.* at 889, 891-92.  Cooper had not requested counsel, but the Court nevertheless concluded that, under the particular circumstances—including a capital offense and a defendant with "intellectual endowment . . . 'at the lower limits of normal'"—the confession was obtained in violation of a fundamental right. *Id.* at 889-91.[9]

Together, *Duck*, *Allen*, and *Cooper* establish that the ends-of-justice exception is concerned not only with whether an error altered the outcome, but also whether the error itself amounted to a denial of a fundamental constitutional protection.  *Duck*, 8 Va. App. at 570-71; *see also Herring v. Herring*, 33 Va. App. 281, 287 (2000) (explaining that some "procedures are so crucial that a court's failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the *result*"); *Brown v. Commonwealth*, 8 Va. App. 126, 132-33 (1989) (rejecting the argument that a defendant must show a different sentence would have been imposed to establish a miscarriage of justice).  These cases confirm that the ends-of-justice exception may apply when a due process violation results in a denial of essential rights, even absent a showing that the outcome would have been different. *Cooper*, 205 Va. at 889, 891-92; *Allen*, 36 Va. App. at 341-42; *Duck*, 8 Va. App. at 571.

---

[9] We recognize that *Cooper* was decided before *Miranda v. Arizona*, 384 U.S. 436 (1966); nevertheless, the Court emphasized that the denial of such a fundamental right itself constituted a miscarriage of justice warranting appellate review.  *Cooper*, 205 Va. at 889-90.

- 10 -

When the asserted constitutional harm is the denial of a fair and impartial sentencing authority, the violation inheres in the process itself. Under such circumstances, requiring a defendant to demonstrate that a different sentence would have been imposed would be inconsistent with the nature of the right at issue. *Cooper*, 205 Va. at 889-91; *Allen*, 36 Va. App. at 341-42; *Duck*, 8 Va. App. at 570-71. A defendant, therefore, need not prove that the sentence would have been more lenient to demonstrate a miscarriage of justice arising from a due process violation of this kind. *See Brown*, 8 Va. App. at 132-33 (rejecting the Commonwealth's argument that to demonstrate a miscarriage of justice, a defendant must show a different sentence would have been imposed, when the error is so contrary to fundamental notions of justice).

Second, if the record demonstrates a due process violation, declining to apply the exception would result in a grave injustice and a "denial of essential rights,"[10] specifically in this case, the constitutional right to be sentenced by a fair and impartial judge. Both the United States Constitution and the Virginia Constitution guarantee that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]"); Va. Const. art. I, § 11 ("[N]o person shall be deprived of his life, liberty, or property without due

---

[10] In the context of waiver, federal circuits have declined to enforce appeal waivers where the defendant appeals on the ground that a sentencing court relied on a constitutionally impermissible factor. *See United States v. Guillen*, 561 F.3d 527, 531 (D.C. Cir. 2009) ("[W]e note a waiver does not shield from review a sentence colorably alleged to rest upon a constitutionally impermissible factor, such as the defendant's race or religion."); *United States v. Teeter*, 257 F.3d 14, 25 n.9 (1st Cir. 2001) (noting an appeal waiver will not be applied if there is a miscarriage of justice, such as where an appellant argues their sentence was based on race or ethnicity); *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000) (excluding from appeal waivers challenges that the sentence was "based on a constitutionally impermissible factor such as race"); *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997) (same, impermissible factors such as race or gender). Although not directly on point, this line of cases reinforces the principle that due process arguments are not readily deemed waived when a sentencing judge considers impermissible factors, particularly race.

process . . . and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged[.]"). Due process includes the right to be tried and sentenced by a neutral and impartial judge. Although "[bias] alone [is] not [a] sufficient basis for imposing a constitutional requirement [of disqualification] under the Due Process Clause," *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986), the right "protects not only against express judicial improprieties but also against conduct that threatens the 'appearance of justice,'" *Aiken Cnty. v. BSP Div. of Envirotech Corp.*, 866 F.2d 661, 678 (4th Cir. 1989) (quoting *Aetna Life Ins. Co.*, 475 U.S. at 825).

The Canons of Judicial Conduct for the Commonwealth of Virginia reinforce the importance of judicial impartiality and maintaining the public appearance of justice. One canon provides that a judge's impartiality may reasonably be questioned when "the judge is cognizant of a personal bias or prejudice concerning an issue[.]" Va. Sup. Ct. R. pt. 6, § III, Canon 1(D)(1)(a); *see also id.* Canon 1(A) (explaining that a judge "must not allow family . . . or other relationships to influence the judge's judicial conduct or judgment"); *id.* Canon 1(H) (explaining that a judge must "perform judicial duties without bias or prejudice" and "must not, in the performance of judicial duties, by words or conduct manifest bias or prejudice").

The judge's comments addressing race, comparing Jackson to another Black defendant sentenced earlier that day, and drawing a comparison to his own family, as a whole, threaten the appearance of justice and could reasonably call into question the judge's impartiality. *See Aetna Life Ins. Co.*, 475 U.S. at 825. Consistent with *Allen*, *Duck*, and *Brown*, such a due process violation would constitute a "grave injustice" or "denial of essential rights."[11]

---

[11] Here, the asserted error is neither speculative nor abstract. The sentencing transcript affirmatively demonstrates that the court compared Jackson's conduct to that of another Black defendant sentenced earlier that day and referenced unrelated criminal behavior not before the court. The judge specifically noted that "young men come before [him] all the time" and that "all of them are young men *like* Mr. Jackson and they want to have a gun." R. 334-35 (emphasis

- 12 -

We hold that, where the cumulative effect of a sentencing judge's personal comments creates a reasonable appearance that impermissible considerations entered the sentencing decision, thereby undermining the fairness and impartiality of the proceeding, the resulting denial of a fair and impartial sentencing authority constitutes a miscarriage of justice to which the ends-of-justice exception applies. The ends-of-justice exception is not meant to excuse strategic silence or to encourage counsel to withhold contemporaneous objections. To the contrary, timely objections remain essential to allowing the trial judge to address the objection or clarify their statement, preserving error for appellate review, and ensuring fair and impartial sentencing proceedings. This case involves a rare situation in which the overall sentencing remarks, viewed cumulatively, gave a reasonable impression that impermissible considerations influenced the sentencing decision and compromised the fairness of the process itself. Thus, proceeding on the merits of the appeal is warranted.

## II. Fair and Impartial Sentencing Authority

Jackson argues that the sentencing judge's comments showed that the judge "was not fair, impartial [or] unbiased," in violation of his due process rights. The Commonwealth responds by focusing on standards governing recusal, emphasizing that recusal is required only when a judge has a "direct, personal, substantial pecuniary interest" in the outcome of a case. Jackson, however, does not seek recusal. Rather, he assigns error to the judge's personal comments

---

added). The judge also specifically compared Jackson's case to another case he heard earlier that day, involving a Black convicted felon who illegally obtained a gun and committed a shooting behind the courthouse. R. 334.

A defendant has a right to be sentenced based on his own conduct and record, not the conduct of others of the same race. *See Lockett v. Ohio*, 438 U.S. 586, 602 (1978); *Chapman v. United States*, 500 U.S. 453, 467 (1991). When a sentencing court relies on extrajudicial facts or unrelated criminal cases, the resulting sentence rests on improper considerations and constitutes a clear constitutional defect.

Declining to apply the ends-of-justice exception in these circumstances would result in a grave injustice, because Jackson would remain subject to a sentence imposed through a constitutionally flawed process.

- 13 -

(1) comparing his case to the case of another young Black defendant the judge sentenced earlier that day, (2) linking the victim's family's experience to the judge's own family, and (3) expressing broad concern about increasing community gun violence.

Jackson's due process claim hinges on the sentencing transcript itself. The court's remarks are not disputed, and our analysis does not rely on resolving factual conflicts about what occurred at the crime scene or on assessing witness credibility. The question is whether the sentencing record, as shown by the judge's statements, reasonably created the impression that impermissible considerations influenced the sentencing rationale.

Certainly, judges are not required to sentence in an isolated vacuum. Sentencing inherently involves deterrence considerations and reflections on the broader societal consequences of criminal conduct. A judge's expressions of concern about community violence, victim impact, and public safety are not, on their own, improper. The constitutional line is crossed, however, when the sentencing record reasonably reflects that the court's decision rested, even in part, on extrajudicial considerations, such as racial characteristics of the defendant or comparisons to unrelated defendants or criminal conduct not before the court.

This Court emphasizes that the constitutional concern here is not the mere utterance of the words "Black men" and "Black women," nor the judge's evident concern about community violence. Rather, due process is implicated when race appears to be linked, explicitly or implicitly, to criminal behavior, dangerousness, or sentencing severity. In this case, no single remark is viewed in isolation; it is the cumulative effect of the court's explicit racial framing, the comparison to an unrelated defendant, and the judge's personal identification with the victim's family that highlights the due process concern. Even well-intentioned remarks can undermine the appearance of impartiality when they suggest that a defendant is being viewed through a racialized lens rather than as an individual entitled to individualized sentencing.

- 14 -

The judge's cumulative comments—particularly those signaling consideration of race and other people's crimes—created an appearance of partiality and reliance on impermissible considerations, violating Jackson's due process rights. Although individualized sentencing is not constitutionally required, the judge's limited individualized discussion, viewed in context, underscores why resentencing is necessary.[12]

Although sentencing decisions are generally reviewed for abuse of discretion, constitutional claims are reviewed de novo.[13] *See Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011) ("We review the [circuit] court's sentence for abuse of discretion."); *Crawford v. Commonwealth*, 281 Va. 84, 97 (2011) ("On appeal, constitutional arguments present questions of law that this Court reviews de novo."). This case presents an important distinction between substantive and procedural sentencing review. Substantive sentencing review is extremely limited. When a trial court imposes a sentence within the statutory range and without statutory or constitutional error, appellate courts generally will not disturb the court's exercise of discretion. *Cellucci v. Commonwealth*, 77 Va. App. 36, 49 (2023) (en banc) (citing *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016)). As this Court explained, "This is the extent of

---

[12] Although not constitutionally required, individualized sentencing is a long-recognized principle. *See Lockett*, 438 U.S. at 602; *Chapman*, 500 U.S. at 467. Virginia law likewise requires punishment to be determined by the evidence against the defendant, not by comparison to sentences imposed in other cases. *See Walker v. Commonwealth*, 212 Va. 289, 291 (1971) ("[A] defendant has a right to have his guilt or innocence, and punishment, determined by the evidence against him and not by what sentence has been imposed in another criminal prosecution against an accomplice, a co-defendant[,] or anyone else."); *Davis v. Commonwealth*, 36 Va. App. 291, 297-98 (2001).

Here, the judge's comparison of Jackson to another defendant sentenced earlier that day, paired with generalized, racialized remarks on community violence, was not grounded in record facts specific to Jackson and risked sentencing "in the abstract." *See Davis*, 36 Va. App. at 297-98. This risk reinforces the perception that sentencing was based on impermissible considerations.

[13] "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both." *Shivaee v. Commonwealth*, 270 Va. 112, 119 (2005).

our substantive sentencing review '[a]bsent an alleged statutory or constitutional violation.'" *Id.* (alteration in original) (quoting *Minh Duy Du*, 292 Va. at 563). By contrast, where a defendant alleges that a sentencing decision was infected by a statutory or constitutional violation, appellate review necessarily focuses on the procedural fairness of the sentencing process. In such circumstances, the inquiry is not whether the sentence falls within permissible limits, but whether the sentencing procedure satisfied constitutional requirements of neutrality, impartiality, and fundamental fairness. *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (explaining that the constitutional guarantee of due process continues to operate through sentencing); *see also United States v. Bakker*, 925 F.2d 728, 740 (4th Cir. 1991) ("Sentencing discretion, however, must be exercised within the boundaries of due process.").

"It is elementary that 'a fair trial in a fair tribunal is a basic requirement of due process.'" *Weiss v. United States*, 510 U.S. 163, 178 (1994) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)). "Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the *probability* of unfairness." *In re Murchison*, 349 U.S. at 136 (emphasis added). "A necessary component of a fair trial is an impartial judge." *Weiss*, 510 U.S. at 178; *see also Aetna Life Ins. Co.*, 475 U.S. at 820, 825. The United States Court of Appeals for the Fourth Circuit[14] has explained that "a judge must possess neither actual nor apparent bias against a party[.]" *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003); *Aiken Cnty.*, 866 F.2d at 678. Due process protections, including the right to a

---

[14] In the absence of Virginia law to the contrary, we find persuasive the decisions of the federal circuit courts of appeals on matters of federal constitutional law. *See Toghill v. Commonwealth*, 289 Va. 220, 227 (2015) ("Although we are not bound by decisions of Federal courts (other than the United States Supreme Court) on matters of Federal law . . . , 'we give respectful consideration to such lower Federal court decisions as seem persuasive.'" (alteration in original) (quoting *ACE Prop. & Cas. Ins. Co. v. Comm'r of Revenue*, 770 N.E.2d 980, 986 n.8 (Mass. 2002))).

fair tribunal, extend to sentencing.[15]  *Brown*, 8 Va. App. at 131 (first citing *United States v. Tucker*, 404 U.S. 443 (1971); and then citing *Townsend v. Burke*, 334 U.S. 736 (1948)).

Sentencing is inherently difficult.  *Minh Duy Du*, 292 Va. at 563.  As the Supreme Court of Virginia has recognized:

> Criminal sentencing decisions are among the most difficult judgment calls trial judges face . . . [and] [b]ecause this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case.

*Id.*  This Court similarly recognizes that the sentencing judge must undertake a "quest for a sentence that best effectuates the criminal justice system's goals of deterrence (general and specific), incapacitation, retribution and rehabilitation."  *Gilliam v. Commonwealth*, 21 Va. App. 519, 524 (1996) (quoting *United States v. Morris*, 837 F. Supp. 726, 729 (E.D. Va. 1993)).

It is well-established that, "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion."  *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007) (quoting *Abdo v. Commonwealth*, 218 Va. 473, 479 (1977)); *see also Minh Duy Du*, 292 Va. at 563-64 (explaining that a sentencing decision "will not be disturbed as long as it stays within" the range of punishment set by the legislation "and is not influenced by any mistake of law" (quoting *Lawlor*

---

[15] Code § 19.2-295.1 illustrates this point that impartiality extends to sentencing.  Under that provision, a defendant has a statutory right to sentencing by a jury.  Code § 19.2-295.1 ("In cases of trial by jury, upon a finding that the defendant is guilty . . . a separate proceeding limited to the ascertainment of punishment shall be held . . . before the same jury when ascertainment of punishment by jury has been requested by the accused[.]").  The right to sentencing by jury includes the right to an impartial jury to determine the sentence.  *See* Code § 19.2-262.01 ("In any criminal case, the court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any relevant question to ascertain whether the juror can sit *impartially* in either the *guilt or sentencing* phase of the case." (emphases added)); *see also Bland-Henderson v. Commonwealth*, 303 Va. 212, 221 (2024) ("[T]he statutory purpose in allowing voir dire regarding the potential range of punishment is only to determine if the jurors can be impartial *in the sentencing phase*.").

*v. Commonwealth*, 285 Va. 187, 212-13 (2013))). Although sentences falling "within the lawful boundaries of applicable sentencing statutes . . . are vested in the sound discretion of trial judges," they must also conform to constitutional limits, including due process. *Minh Duy Du*, 292 Va. at 563; *Gardner*, 430 U.S. at 358; *Bakker*, 925 F.2d at 740.

Although violations of the Canons of Judicial Conduct do not, in themselves, establish constitutional error, the Canons offer important guidance in evaluating whether judicial conduct aligns with due process. They embody longstanding principles aimed at maintaining public confidence in the fairness and integrity of the judiciary, principles that closely mirror constitutional requirements of neutrality and impartiality. In Virginia, "[i]t is not required nor desired that judges of the Commonwealth possess the ability to utterly set aside all human emotion while discharging their duties." *Prieto v. Commonwealth*, 283 Va. 149, 165 (2012). However, the Canons of Judicial Conduct underscore the importance of impartiality for judges in the context of recusal. Under Canon 1(D)(1)(a),

> A judge must recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>
> (a) the judge is cognizant of a personal bias or prejudice concerning an issue, a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

Va. Sup. Ct. R. pt. 6, § III, Canon 1(D)(1)(a). The Supreme Court of Virginia emphasized that this canon is intended to maintain public perception of judicial fairness and public confidence in the integrity of the judiciary. *Prieto*, 283 Va. at 163 (quoting *Wilson v. Commonwealth*, 272 Va. 19, 28 (2006)); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 888 (2009) ("The ABA Model Code's test for appearance of impropriety is 'whether the conduct would create in reasonable minds *a perception* that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." (emphasis added) (quoting American Bar

- 18 -

Association, Annotated Model Code of Judicial Conduct, Canon 2A, Commentary (2004))).

Although this case is not a recusal matter,[16] the underlying principles remain instructive.

We are ultimately guided by constitutional principles of due process, which demand a neutral sentencing authority and guard against even the "probability of unfairness" in judicial proceedings. *Weiss*, 510 U.S. at 178; *Aetna Life Ins. Co.*, 475 U.S. at 820, 825; *Prieto*, 283 Va. at 163. We also find persuasive federal circuit court cases holding that sentences imposed on the basis of impermissible considerations, such as race or national origin, violate due process. *See, e.g.*, *United States v. Borrero-Isaza*, 887 F.2d 1349, 1355 (9th Cir. 1989) (national origin); *see also Baldwin v. Alabama*, 472 U.S. 372, 382 (1985) (quoting *Zant v. Stephens*, 462 U.S. 862, 885 (1983) (recognizing "race, religion, or political affiliation of the defendant" as "constitutionally impermissible" factors when fashioning a death sentence)). Other courts have likewise recognized that reliance on race or national origin at sentencing undermines confidence in judicial impartiality. *See Deyton v. Keller*, 682 F.3d 340, 345 (4th Cir. 2012) (explaining that the Supreme Court has described as "impermissible" during sentencing the consideration of race, religion, and political affiliation (quoting *Zant*, 462 U.S. at 885)); *Baldwin*, 472 U.S. at 382; *Borrero-Isaza*, 887 F.2d at 1355.

In *United States v. Bakker*, the Fourth Circuit found a violation of due process where a judge considered religious characteristics at sentencing. 925 F.2d at 740-41. "During

---

[16] This Court does not reach the issue of recusal, as Jackson did not move for recusal at the circuit court, nor does he argue on appeal that the judge erred in failing to recuse himself. Jackson only argues that the circuit court erred "when it sentenced [Jackson] . . . because the court denied [Jackson] due process by making personal comments at sentencing that deprived [Jackson] of a fair, impartial and unbiased judge." We therefore do not find persuasive the Commonwealth's argument that "[a] purported violation of the Canons alone is not enough to mandate recusal." The Commonwealth's reliance on recusal standards mischaracterizes the nature of Jackson's claim. Jackson does not argue that the sentencing judge was required to recuse himself, nor does this case involve a post-judgment challenge to judicial qualification. Instead, the claim sounds in due process.

sentencing, the judge stated of Bakker: 'He had no thought whatever about his victims and *those of us who do have a religion are ridiculed as being saps from money-grubbing preachers or priests.*'" *Id.* at 740. Considering this comment, the *Bakker* Court reasoned that, although a judge may hold religious beliefs, a court "cannot sanction sentencing procedures that *create the perception* of the bench as a pulpit from which judges announce their personal sense of religiosity and simultaneously punish defendants for offending it." *Id.* at 740 (emphasis added). The court found the judge abused his discretion and remanded for resentencing before "a different district judge to ensure that the ends of due process are achieved." *Id.* at 741.

Applying these guiding principles and persuasive authority, we conclude that the sentencing record undermines confidence in the fairness and impartiality of the sentencing proceeding, in violation of due process.[17] Before imposing Jackson's sentence, the judge made comments addressing race, other felons who had appeared before him, and the judge's own family. R. 333-34. These comments could reasonably be understood as reliance on extrajudicial considerations. The judge specifically referenced Jackson's race by asking, "What is it going to take for young [B]lack men to quit killing each other? And young [B]lack women, what is it going to take? We could outlaw all the guns." R. 334. While reflecting the judge's perceptions of community realities, this racialized language created the appearance that an improper reliance on race, as connected in

---

[17] The Court does not conclude that the sentencing judge held racial animus or acted with any form of discriminatory intent. The record contains no evidence of such motives. Nor does this Court suggest that the judge's remarks reflected personal prejudice. On the contrary, the transcript shows a judge struggling with the tragic loss of life, community violence, and the emotional impact of victim testimony. In fact, the record indicates that a family member of the victim expressly mentioned race, stating that Jackson had taken her mother's life "to show that we're not really treating each other equally," and lamenting that the killing involved "another [B]lack person." R. 303. That testimony provides important context for the judge's subsequent remarks and highlights that his comments may have been made in response to emotionally charged proceedings rather than from personal bias.

This ruling also does not prohibit sentencing judges from recognizing the broader social harms of crime. Rather, it prohibits relying—either explicitly or apparently—on extrajudicial, race-based references and comparisons unsupported by the record when imposing a sentence.

- 20 -

part to gun violence, influenced the sentencing calculus.[18]  Due process forbids sentencing that reasonably appears to rest on protected characteristics, regardless of motive or intent.

The judge also referenced race in discussing other cases, noting that "young men come before [him] all the time" and that "all of them are young men *like* Mr. Jackson and they want to have a gun."  R. 334-35 (emphasis added).  He specifically compared Jackson's case to another case he heard earlier that day, which involved a Black convicted felon who committed a shooting behind the courthouse, illegally obtained a gun, and had gang ties.  R. 334.  The judge therefore made an extrajudicial comparison to an unrelated defendant, which, combined with the judge's racial references, reasonably created an appearance that race rather than facts of the case influenced the sentencing decision.

Sentencing should be individualized and tailored to the defendant, grounded in the specific facts and circumstances of the case before the court.  *Walker v. Commonwealth*, 212 Va. 289, 291 (1971); *Davis v. Commonwealth*, 36 Va. App. 291, 297-98 (2001).  References to unrelated cases, involving different defendants and conduct, risk introducing extraneous irrelevant considerations into the sentencing decision.  When comparisons are made based on racial similarity, they further increase the appearance that impermissible factors, rather than the defendant's own conduct and history, influenced the sentence imposed.

Further, the judge mentioned his own family, expressing fears about people owning guns and stating that he tells his family to "assume that somebody out there . . . has a gun" and to "not take it for granted because you don't know what's going to happen."  R. 335.  He also could not "imagine what [his] wife would feel like if she had gone through what [the victim's family] went

---

[18] The judge's comments, to the extent of expressing a personal view in performing his judicial duties, that gun control is ineffective in reducing violence in the community, crossed into political and policy questions that are better left to policy-makers in the executive and legislative branches.

through." R. 337. The judge concluded, "[i]t's just -- so it really hit home and hit hard with me when I heard that knowing how close they are. And, unfortunately, there's nothing I can do in this case." R. 338.

Viewed cumulatively, the sentencing judge's remarks—referencing race, comparing Jackson to a different defendant of the same race, and connecting the victim's family's experience to the judge's own family—created an appearance that sentencing was based on extrajudicial, impermissible considerations. Such an appearance undermines the constitutional due process guarantee of a neutral and detached arbitrator. The appropriate remedy is to vacate the sentence and remand for resentencing. On this record, where the sentencing judge's remarks created the appearance of reliance on impermissible considerations, resentencing before a different judge is necessary not as a sanction, but to restore public confidence in the neutrality of the sentencing process. *See Bakker*, 925 F.2d at 741 (remanding before a different judge to "ensure that the ends of due process are achieved"); *see also* Toby J. Heytens, *Reassignment*, 66 Stan. L. Rev. 1, 49 (2014) (discussing considerations that may support reassignment on remand, including preserving the appearance of fairness).[19]

CONCLUSION

The United States Constitution and the Virginia Constitution guarantee every defendant the right to be sentenced by a neutral and detached judge. This record shows that the sentencing judge, although well-intentioned, made comments invoking extrajudicial considerations, including race, prior unrelated defendants, and the hypothetical personal impact of the crime on the judge's own family. These comments undermined the appearance of a fair and impartial

---

[19] Nothing in this opinion should be read as impugning the integrity, character, or good faith of the sentencing judge. Our holding rests solely on the constitutional requirement that sentencing proceedings avoid even the reasonable appearance that impermissible considerations influenced the outcome.

sentencing proceeding and introduced factors that due process forbids a court from considering when imposing a sentence. A sentence imposed under circumstances that create a reasonable appearance that race, or other extrajudicial considerations, influenced the sentencing decision violates due process and cannot stand, even when the sentence falls within statutory limits.

Accordingly, because the circuit court violated Jackson's due process rights, this Court remands for resentencing before a different circuit court judge to ensure a neutral and detached sentencing authority and maintain public confidence in the judiciary's impartiality.

*Vacated and remanded.*